**STATE of Tennessee, Appellee,**

v.

**Donald Wayne HOPPER, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Opinion Filed March 13, 1985.

Permission to Appeal Denied by Supreme Court June 3, 1985.

Edward Witt Chandler, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen., William Barry Wood, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Joseph L. Patterson, Don D. Strother, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Donald Wayne Hopper, and his codefendant, Randall Cole, were each convicted of first degree murder in the perpetration of a robbery, and both received a sentence of life in the penitentiary. Cole did not appeal.

In this appeal, the defendant raises some twenty-four (24) enumerated issues. Specifically, his issues are as follows:

In Issues 1, 2, and 3, he questions the sufficiency of the evidence;

In Issue 4, he says the trial court erred in denying his motion for a severance;

In Issues 5, 6, and 7, he complains about an alleged illegal arrest;

In Issue 8, he alleges prosecutional misconduct;

In Issues 9 through 16, he complains about alleged errors in the voir dire process;

In Issues 17 and 18, he contends it was error to allow certain firearm shells to be admitted in evidence;

In Issue 19, he says the trial court erred in denying his motion to dismiss the indictment;

In Issue 20, he complains about the denial of his right to a preliminary hearing;

In Issue 21, he contends the State improperly failed to disclose the identity of a "Crime Stoppers" informant;

In Issue 22, he raises another voir dire complaint;

In Issue 23, he alleges that the trial court failed to properly charge the definition of murder;

And finally, in Issue 24, he brings another complaint about prosecutorial misconduct.

In Issues 1, 2, and 3, the defendant challenges the sufficiency of the evidence, specifically arguing several complaints which we will consider after we summarize some of the evidence.

The evidence clearly established that on December 31, 1982, shortly after 7:00 p.m., Randall Cole robbed Ernestine Mayham of her purse, containing money and other items, and that the defendant was the driv-

er of the get-away Pontiac vehicle, which vehicle was owned by Randall Cole. As they left the scene of the robbery, a police car, occupied by Memphis Police Officers John Wesley Sykes and Charlotte Creasy gave chase. Subsequently, during the high-speed chase, Randall Cole fired three (3) shots from a .357 Magnum pistol at the officers, one shot hitting Officer Sykes in the neck, from which gunshot wound the officer died.

Cole and the defendant successfully got away from the police on the night in question. However, on January 2, 1983, a Pontiac vehicle was found at 4079 Burrow Street, and the proof definitely established that this vehicle belonged to Cole, and that it was the same vehicle that was involved in the robbery and the vehicle that Officers Sykes and Creasy had been chasing at the time Officer Sykes was shot. After further investigation, the defendant and Cole were arrested.

One witness, Carl Harland, saw Cole's Pontiac automobile, at approximately 7:00 p.m. on December 31, as it pulled up beside him at a traffic light. Harland identified the defendant as being the driver of the car at that time.

Evidence given by Danny Grubbs showed that Cole was renting a room from him at 4079 Burrow Avenue on December 31, 1982. Grubbs saw Cole and the defendant at his house on the Wednesday before December 31, 1982. Grubbs saw a .357 Magnum pistol on a T.V. tray and the pistol was identified to him as belonging to the defendant. Cole and the defendant were also together at Grubbs's house around 5:00 p.m. on December 31, 1982.

Other evidence showed that the police found Cole's Pontiac automobile in the back yard at Grubbs's residence. Also, Chris Lancaster, a relative of Cole, saw the defendant and Cole in the early morning hours of January 1, 1983, when they arrived at the Lancaster house. They had a pistol and shotgun in their possession. They spent the night in the Lancaster home. The next morning Mrs. Chris Lancaster saw both Cole and the defendant with weapons, and she identified the pistol, which turned out to be the murder weapon, as being the pistol she had seen in her den at the time.

Additionally, the evidence showed that Cole and the defendant spent the night of January 1, 1983, at the house of Walt Holcomb. Holcomb saw the defendant in possession of a pistol. Subsequently, Holcomb gave the police permission to search his house, and the police found the murder weapon in the room where Cole and the defendant had stayed.

Further, according to the testimony of Cole's sister, on the evening of December 31, she went with Cole and the defendant to visit some relatives in Scotts Hill, Tennessee. Cole told her he had shot Sykes, and the defendant told her he was driving the car.

Other evidence established that lead fragments removed from Sykes's squad car and other lead fragments found at the scene had been fired from the Magnum pistol recovered from Mr. Holcomb's house. Also, the fingerprints of both Cole and the defendant were found on Cole's Pontiac automobile.

Cole testified in his own behalf and admitted the robbery of Ms. Mayham, and the shooting of Officer Sykes. He insisted he did not intend to hit anyone when he fired but only wanted to create a diversion. Cole said the defendant was the driver of the Pontiac automobile during the commission of the robbery of Ms. Mayhem and the murder of Officer Sykes.

The defendant testified and denied any involvement in the robbery of Ms. Mayham or in the murder of Officer Sykes. The defendant attempted to establish an alibi, which defense the jury rejected.

■ We need not further detail the evidence. Suffice it to say that the record is replete with other incriminating evidence against the defendant. His guilt is shown beyond a reasonable doubt. The proof fully satisfies the evidentiary requirements of T.R.A.P. 13(e) and *Jackson v. Virginia*,

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Under his evidentiary complaint, in Issue 1, the defendant argues that the State failed to prove that the killing of Officer Sykes was done "deliberately." The indictment did allege that the killing was done "wilfully, deliberately and maliciously" during the perpetration of a robbery.

■ In a felony-murder prosecution the State is not required to prove the elements of malice, deliberation and premeditation. *State v. Johnson*, 661 S.W.2d 854 (Tenn.1983); *Farmer v. State*, 201 Tenn. 107, 296 S.W.2d 879 (1956). The defendant concedes that this is the law, but says since that element of deliberation was alleged, it should have been proved. We disagree. This allegation was mere surplusage and could not have misled the defendant in any manner.

■ Further, the State's proof showed that the defendant was guilty as an aider and abettor to Cole in the robbery of Ms. Mayham, and that he was equally culpable with Cole in the killing of Officer Sykes as they fled from the robbery scene. The indictment charged felony-murder and the proof showed this offense. While, as stated, the State was not required to prove the element of deliberation, the proof affirmatively established it anyway.

We find no variance between the allegations in the indictment and the proof. The defendant's argument to the contrary is without merit.

Next, under Issue 2, the defendant contends that the felony-murder rule is unconstitutional as applied to him in this case. Specifically, he argues that it is cruel and unusual to sentence a person to life imprisonment for a death he did not cause and had no conscious intent to produce.

■ The Legislature may declare an act or conduct to be criminal without regard to the actor's intent. *McKnight v. State*, 171 Tenn. 574, 106 S.W.2d 556 (1937); *Hunter v. State*, 158 Tenn. 63, 12 S.W.2d 361 (1928). The statutory form of murder in the first degree while in the perpetration of a felony is a valid and constitutional exercise of the legislative function.

■ Further, the facts we have heretofore summarized show that the defendant was a willing participant in the robbery of Ms. Mayham and in the killing of Officer Sykes. As such, he was accountable for all the consequences flowing therefrom. *Bright v. State*, 191 Tenn. 249, 232 S.W.2d 53 (1950). Also, we point out that the proof showed that Cole used the defendant's pistol in the shooting of Officer Sykes, and there was testimony by Cole that as they were fleeing from the robbery scene, the defendant pushed the gun across the seat to him, just prior to Cole firing at the officers. Clearly, under the proof in this case, it may not be legitimately argued that the defendant did not intend to cause harm to Officer Sykes or that the killing of the officer was accidental.

Also, there is no merit to the defendant's argument under Issue 3, that the crime against Ms. Mayham was merely a "purse snatch" and not robbery.

■ The proof showed that as Ms. Mayham was getting out of her car, Cole was standing behind her. He had his hand beneath his jacket, and he told her to get back in her car so that he wouldn't have to hurt her. Cole then took her purse from the seat of the car and ordered her not to move. Her purse contained seventy ($70.00) or eighty ($80.00) dollars in cash. She testified she was in fear of her life. Obviously, the above was sufficient to establish the elements of robbery. T.C.A. § 39-2-501.

■ Further, the defendant's additional argument under Issue 3, that Officer Sykes was not killed "in the perpetration" of a robbery is equally unmeritorious. Officer Sykes was killed immediately after the robbery while Cole and the defendant were in the process of fleeing from the robbery scene. Their flight was part and parcel of the robbery event, and was not collateral to it. Clearly, the killing of Offi-

cer Sykes had "an intimate relation and close connection" to the robbery of Ms. Mayham, and was not "separate, distinct, and independent from it." *See Farmer v. State,* 201 Tenn. 107, 116, 296 S.W.2d 879 (Tenn.1956). Thus, under the facts of this case, we readily conclude that Officer Sykes was killed by Cole and the defendant in their perpetration of the robbery of Ms. Mayham, thereby making them guilty of first degree murder under the felony-murder rule. T.C.A. § 39–2–202.

■■■ In Issue 4, the defendant says that the trial court erred in denying his motion for a severance. Clearly, from the facts of this case as we have outlined, it was proper for the defendant and Cole to be tried in a joint trial. The fact that Cole testified in his own behalf and implicated the defendant would not constitute grounds for a severance. See *Dorsey v. State,* 568 S.W.2d 639 (Tenn.Cr.App.1978); *State v. Fisher,* No. 79–1–III (Tenn.Cr.App., Nashville, April 9, 1980). No evidence was introduced against the defendant that would not have been admissible in a separate trial.

We find that the trial court did not abuse its discretion in denying the defendant's severance motion. *Brady v. State,* 584 S.W.2d 245 (Tenn.Cr.App.1979).

In Issues 8 and 24, the defendant contends that the prosecution was guilty of misconduct. Specifically, he argues that the State was improperly allowed to impeach his testimony by the use of a prior inconsistent statement. The defendant also contends that the prosecution was guilty of misconduct due to its failure to advise him of a photographic identification made by the witness Carl Harland.

■■■ The record shows that when the State used the defendant's prior statement in cross-examining him, the defendant made no objection. Also, we point out that defense counsel states in his brief that the trial court had previously ruled that the statement had been lawfully obtained; thus the State could have used the statement in its proof-in-chief, had it so desired. We note that the defendant's statement to

the police is also involved in Issues 5, 6 and 7, which we will discuss later in this opinion.

Additionally, at the time the photographs from which Mr. Harland identified the defendant were offered in evidence, defense counsel objected because some numbers were on them. After it was agreed that the numbers would be covered up, defense counsel specifically stated he had no objection and was withdrawing his objection.

■■■ In the absence of a contemporaneous objection to proffered evidence, the evidence is competent, and any complaint about the admission of such evidence is waived. *State v. Harrington,* 627 S.W.2d 345 (Tenn.1981); *State v. Keele,* 644 S.W.2d 435 (Tenn.Cr.App.1982).

■■■ Accordingly, since the record clearly shows that no objection was made to the State's reference to the defendant's statement and to the admission of the photographs, we hold that these issues were waived.

■■■ The defendant contends in his 17th and 18th issues that the trial court erred in allowing into evidence some firearm shells, arguing that these shells were obtained as a result of an illegal search.

The defendant filed no pretrial motion to suppress these shells, as he was required to do by Tenn.R.Crim.P. 12(b)(3). Thus, these issues have been waived. Moreover, the trial evidence showed that the defendant lacked standing to contest the search in question.

■■■ The trial evidence showed that on January 2, 1983, the police found the questioned shells in a search of Danny Grubbs's premises at 4079 Burrow Avenue. Mr. Grubbs rented a room at that address to codefendant Cole up until December 31, 1982, at which time Cole's rent was up. Cole was supposed to come back on the following Monday to get the rest of his things, but did not do so. On January 2, Mr. Grubbs gave the police permission to search his house and yard. The evidence showed that the defendant neither rented

from Mr. Grubbs, nor otherwise had any possessory interests in the house of Mr. Grubbs. Obviously, Cole's possessory interests, if any, in the house of Mr. Grubbs would not extend to the defendant.

Clearly, under the evidence shown at trial, the defendant lacked any standing to complain about the search of Mr. Grubbs's house. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Griffith*, 649 S.W.2d 9 (Tenn.Cr.App.1982).

The defendant's 21st issue concerns his complaint that the trial court erred in denying his motion for disclosure of an alleged "Crime Stoppers" informant.

There is nothing in the transcript of the evidence to show that any informant was involved in this case. We note that in the State's written response to the defendant's disclosure motion, the State denied that any such informant existed.

Thus, with the absence of anything in the record to show that any informant existed in this case, the issue is patently without merit.

The defendant's complaint in Issue 23, that the trial court erred in charging the definition of murder to the jury is also without merit. The trial court correctly explained in his charge the elements of murder in the perpetration of a robbery. The defendant's specific complaint that the trial court used the singular of the word "defendant," in certain places, instead of the plural of that word, is of no significance. In no way could the jury have been confused or misled in this regard.

In the defendant's remaining issues (5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, and 22), he raises a multitude of complaints questioning the legality of his arrest, the trial court's rulings on his motions to suppress and to dismiss the indictment, the voir dire process, and other rulings and actions allegedly taken by the trial court.

The State contends that the defendant has waived appellate review of these issues by his failure to present an adequate record concerning them. We agree.

The transcript before us consists of only the transcript of the evidence adduced at trial. Neither the voir dire proceedings nor any evidence heard on any motions to suppress are contained in the record. Likewise, there is no evidence about any alleged illegal arrest, or on any of the other matters that are involved in these issues.

It is an appellant's duty to file an adequate transcript of the "proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the basis of appeal." T.R.A.P. 24(b); *State v. Jones*, 623 S.W.2d 129 (Tenn.Cr.App.1981). Further, an alleged error will not be considered on appeal if the record contains nothing to support it. *Baldwin v. State*, 204 Tenn. 639, 325 S.W.2d 244 (1959); *Jackson v. State*, 539 S.W.2d 337 (Tenn.Cr.App. 1976). Also, in the absence of a transcript to support issues that are raised on appeal, it will be presumed that the evidence supports the trial court's action and rulings. *State v. Jones, supra.*

Therefore, we hold that the appellant has waived appellate review of these latter 14 issues mentioned above.

At this point, and with regard to the above issues that are not supported by the record, we note that at the time this case was argued on January 15, 1985, we denied the defendant's motion to supplement the record, finding that the motion was untimely. After the case was argued and submitted to the Court for decision, the defendant filed a motion on January 24, 1985, requesting that we reconsider our January 15 ruling on his motion to supplement the record. Also, he filed post-argument a motion to be allowed time for further briefing.

The record in this case shows that the defendant was represented at trial by his retained counsel, the Honorable Edward Witt Chandler. Also, Mr. Chandler is the defendant's retained counsel in this appeal. The defendant's trial occurred February 6, 1984, through February 14, 1984. His mo-

tion for a new trial was overruled on March 20, 1984, notice of appeal was filed on April 2, 1984, and on May 7, 1984, the trial court found the defendant to be indigent only for the purpose of allowing a free transcript for appeal.

The transcript shows that on June 20, 1984, and August 9, 1984, the court reporter and the trial judge, respectively, both approved and certified the transcript as a true and accurate record of the proceedings. Further, the transcript contains Mr. Chandler's certification, as follows:

> This is to certify that the Transcript of Evidence adduced at the trial of this cause has been examined by counsel for the defendant/appellant and has been found to be a true and accurate record of the entire proceedings of this cause and has been approved by counsel.

The record was filed in our Court on September 11, 1984. The defendant's brief was filed on November 2, 1984, and the State's reply brief was filed on January 9, 1985, and, as stated, the case was argued before our Court on January 15, 1985.

It is apparent from the defendant's brief which, as stated, was filed on November 2, 1984, that his counsel was then aware that a number of the defendant's issues relating to the voir dire process and to various pretrial hearings and rulings were unsupported by the record, because he was unable to document these complaints by citations to the record.

Nevertheless, in spite of defense counsel's prior certification that the record was accurate and contained all of the proceedings, and in spite of his failure to move to supplement the record at the time he filed his brief, he waited until all briefing was completed and until January 14, 1985, the day before the defendant's case was set for argument, before he filed a motion requesting a supplemental record.

Under the above circumstances, the Court concluded at the time of argument that the defendant's motion to supplement the record was not timely and denied his motion.

■ In connection with our preparation of this opinion, we have reconsidered our January 15 ruling where we denied the defendant's motion to supplement the record. After considering the untimeliness of the motion as set forth above, and after considering the entire record, including the nature of these waived complaints and the generalized argument defense counsel makes about them which we will discuss further below, we conclude that a supplemental record would serve no useful purpose and therefore, we remain of the opinion that the defendant's motion for a supplemental record is not meritorious. Also, we find further briefing is not necessary. Thus, both of the defendant's post-argument motions are denied, and an order to that effect is being filed contemporaneously with this opinion.

Moreover, even without an adequate record, it is readily apparent that the foregoing 14 issues are without merit.

■ The defendant's issues 5, 6, and 7 concern a statement he gave to the police after his arrest. The defendant argues in his brief that his statement was the fruit of an illegal arrest, and that it was obtained in violation of his *Miranda* rights. As we stated earlier in the opinion, the defendant concedes in his brief that the trial court ruled that the statement was lawfully obtained. At any rate, the record shows that the State did not use the statement in its proof-in-chief; rather, the State made reference to it in cross-examining the defendant after the defendant had testified contrary to his prior statement.

Assuming *arguendo* that the defendant was illegally arrested, and that his statement was obtained in violation of his *Miranda* rights, these issues would still be meritless.

■ A *Miranda*-tainted statement can be used for impeachment purposes where the defendant takes the stand and testifies contrary to his prior statement. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570

(1975); *Pyburn v. State*, 539 S.W.2d 835 (Tenn.Cr.App.1976). Further, an illegal arrest would not bar the State's use of the defendant's statement in cross-examining him, as it is proper to use unconstitutionally seized evidence for impeachment purposes. *See e.g. United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York, supra; Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

Further, no record is necessary to answer the defendant's voir dire complaints, referred to in Issues 9 through 16 and 22. In these issues, he alleges he should have been permitted to voir dire the jurors individually. Also, he says he should have been allowed an evidentiary hearing to have the benefit of expert testimony, at the State's expense, to establish that a jury qualified under *Witherspoon (Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)) would be conviction prone. The defendant also argues generally that it was error to allow voir dire of the jurors on the death penalty under *Witherspoon.*

Other than making non-specific arguments on these voir dire issues, the defendant fails to point out anything of substance in his brief to show how he was prejudiced by reason of anything that occurred in the voir dire process.

A trial judge has wide discretion in the examination of prospective jurors and his action will not be disturbed unless there is an abuse of discretion. *State v. Jefferson*, 529 S.W.2d 674 (Tenn. 1975); *Bouchard v. State*, 554 S.W.2d 654 (Tenn.Cr.App.1977). It is the prevailing practice in Tennessee to examine jurors collectively and not individually. *Jefferson, supra* and *Bouchard, supra.* Further, it is in the discretion of the trial judge as to whether the jurors will be examined collectively or out of the presence of each other. Tenn.R.Crim.P. 24(a). Also, the defendant's complaints about the jury being conviction prone, and about them being qualified on the death penalty are without merit. *Witherspoon v. Illinois, supra; State v.*

*Harrington*, 627 S.W.2d 345 (Tenn.1981); *State v. McKay*, 680 S.W.2d 447 (Tenn. 1984).

Additionally, even without a record, it is clear the defendant's Issues 19 and 20 are lacking in merit.

In Issue 19, the defendant argues in his brief that the trial judge acted improperly in calling to the State's attention some erroneous date that was alleged in the first indictment in this case. Even if such occurred, it would not be error.

In Issue 20, the defendant makes some complaint about being denied a preliminary hearing and about not being brought forthwith before a magistrate. We find nothing in the record touching on these complaints. In any event, neither the defendant's vague argument in his brief about these matters, nor the transcript of the evidence adduced at trial, indicate that he was prejudiced in any manner, even if such occurred.

Thus, even if the defendant had not waived Issues 5–7, 9–16, 19, 20, and 22, we can readily see they are without merit, and we so hold.

After a thorough review of this record, we find no merit to any of the defendant's issues. As indicated earlier in this opinion, the evidence is overwhelming to show the defendant's guilt. The record shows that the defendant was tried by a fair and impartial jury.

We overrule all of the defendant's complaints, and the judgment of the trial court is affirmed.

DWYER, J., and JAMES C. BEASLEY, Special Judge, concur.